IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JANICE INGALLS, *et al.*, on            )
behalf of themselves and all others     )
similarly situated,                     )
                                        )
       Plaintiffs,                  )
                                        )
v.                                      )    CASE NO. 2:14-CV-699-WKW
                                        )            [WO]
U.S. SPACE AND ROCKET                   )
CENTER, *et al.*,                       )
                                        )
       Defendants.                  )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Janice Ingalls, Milton Parker, and Kamara Bowling (collectively, "Plaintiffs") are former employees of the Alabama Space Science Exhibit Commission (the "Commission") who worked at the U.S. Space and Rocket Center (the "USSRC") in Huntsville, Alabama.  In this putative class action, Plaintiffs allege that Defendants – the Commission, three of its officers, and the USSRC – violated Alabama's statutes governing compensation for paid state holidays and longevity incentives and that these violations support causes of action under federal and state laws.

Pending is Defendants' Motion to Dismiss (Doc. # 32) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs filed a response in opposition to the motion (Doc. # 39), to which Defendants replied (Doc. # 41).  Plaintiffs also provided a notice of supplemental authority (Doc. # 42), to which Defendants replied

(Doc. # 43).  After careful review of the arguments, the Second Amended Complaint, and the relevant law, the court grants Defendants' motion to dismiss the federal-law claims with prejudice and declines to exercise supplemental jurisdiction over the state-law claims.

## I.  JURISDICTION AND VENUE

The parties do not contest personal jurisdiction or venue.  However, subject-matter jurisdiction is in dispute.

## II.  STANDARDS OF REVIEW

### A.   Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss challenges the court's subject-matter jurisdiction and permits a facial or factual attack.  *McElmurray v. Consul. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  On a Rule 12(b)(1) facial attack, as is present here, the court evaluates whether the complaint "sufficiently allege[s] a basis of subject matter jurisdiction," employing standards similar to those governing Rule 12(b)(6) review.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013).

### B.   Rule 12(b)(6)

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  Rule 12(b)(6) review also includes consideration of any

exhibits attached to the complaint.  *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## III.  FACTS[1]

In March 1970, the USSRC opened its doors in Huntsville, Alabama, and began offering visitors a unique glimpse into the United States space program.  To manage the facility and programming, the Alabama Legislature established the Commission pursuant to Alabama Code §§ 41-9-430 through 41-9-439.  Today the USSRC, through the Commission, provides the leading museum experience for those interested in the United States space program while offering various educational opportunities for children, including the Space Camp and Aviation Challenge.

---

[1] Applying the Rule 12(b)(6) standard, the court has presumed as true the factual allegations in the governing complaint, but not its legal conclusions.  Plaintiffs also attach two documents to the governing complaint, which pursuant to *Thaeter*, are appropriate for consideration under the Rule 12(b)(6) standard.  *See* 449 F.3d at 1352.  The evidence submitted with the later briefing on the motion to dismiss, however, are matters outside of the pleadings; therefore, this evidence has been excluded from consideration.

Plaintiffs are three former state employees who worked for the Commission at the USSRC for more than ten years.[2]  Defendants are the Commission, the USSRC, Deborah E. Barnhart, Brooke Balch, and Vickie Henderson (collectively, "Defendants").  Barnhart serves as the Commission's chief executive officer; Balch is the Commission's chief financial officer; and Henderson is the Commission's vice president of human resources.  Plaintiffs sue these three officials in their individual capacities only.

Plaintiffs allege that, during their employment, Defendants failed to comply with Alabama law when administering their employee-compensation plan.  Plaintiffs contend that Defendants disregarded state statutes, namely, Alabama Code §§ 1-3-8(e) and 36-6-11(a), concerning paid state holidays and longevity pay, depriving them of benefits to which they were legally entitled.

Section § 1-3-8(e) provides that "[a]ny state employee working on a state holiday shall receive a day of compensatory leave or paid compensation in lieu of the holiday as provided herein."  Ala. Code § 1-3-8(e).  Section 1-3-8(a) enumerates paid state holidays for state employees.  Throughout Plaintiffs' employment, the USSRC's Benefits Summary allotted the following seven state holidays with pay:  New Year's

---

[2] Plaintiff Ingalls was hired as a full-time employee in October 2000; she retired on good terms on March 1, 2011.  Plaintiff Davis began her employment in February 2000 in a part-time capacity.  Davis transitioned into a full-time position in 2005.  She remained on staff at the USSRC in a full-time capacity until March 11, 2011.  The terms of her departure are not addressed by the Parties.  Plaintiff Parker was hired as a full-time custodial manager in November 1997.  Parker alleges that he was constructively discharged on August 3, 2014, but this lawsuit is not about his dismissal.

Day; Martin Luther King Jr.'s Birthday; Memorial Day; Independence Day; Labor Day; Thanksgiving Day; and Christmas Day.  But under the Benefits Summary, Plaintiffs did not receive compensatory leave or paid compensation for the following six state holidays:   George Washington's Birthday; Confederate Memorial Day; Jefferson Davis's Birthday; Columbus Day/American Indian Heritage Day; Veteran's Day; and Thomas Jefferson's Birthday.  *See* Ala. Code § 1-3-8(a).  Plaintiffs allege that the Commission's compensation plan for state holidays "represents a disregard of" § 1-3-8(a). (Doc. # 31, at ¶ 25.)

As Plaintiffs progressed in their employment, each also began receiving longevity pay.  Pursuant to the USSRC's Benefits Summary, as pertinent to this lawsuit, employees receive a lump sum of $300.00 annually after five years of employment.  After ten years of service, an employee's annual longevity bonus increases to $400.00, and, after fifteen years of employment, the bonus increases to $500.00 per year.  These benefits mirror those allotted under Alabama Code § 36-6-11(a), but § 36-6-11(a) also provides the following additional benefit for "[e]ach person employed by the State of Alabama, . . . whether subject to the state Merit System or not":

> Beginning October 1, 2006, and continuing each fiscal year thereafter in which an employee does not receive a cost-of-living increase in compensation, each per annum amount provided in this subsection shall be increased by one hundred dollars ($100) per year to a maximum amount of one thousand dollars ($1000) for 25 years of total service as long as the employee remains in service.

Ala. Code § 36-6-11(a).  Plaintiffs allege that Defendants have "violated Alabama law with regard to the proper statutory payment of [l]ongevity [p]ay."  (Doc. # 31, at ¶ 29.)

As an entity of the State and recipient of public funds, the Commission falls under the purview of the State's Department of Examiners of Public Accounts (the "Department").[3]  In January 2014, the Department concluded its examination of the Commission and issued a report concerning the entities' "compliance with applicable laws and regulations of the State of Alabama and whether the public officers, agents, and employees of the Commission properly and lawfully accounted for money and other public assets or resources received, disbursed, or in the custody of the Commission."  (Doc. # 31-1, at 5.)  Incorporated in the report was a schedule of state legal compliance and other findings, in which the Department delineated eight specific findings of noncompliance, two of which are relevant to the present action.

First, the Department found that "the Commission provide[d] six fewer holidays to its state employees than are mandated by law for state employees."  (Doc. # 31-1, at 10.)  The Department recommended that the Commission "award its employees the holidays provided by" § 1-3-8(a), and "provide a day of compensatory leave or paid compensation in lieu of any holiday of which the employee is required to work."  (Doc. # 31-1, at 11.)  Second, the Department found that

> [t]he Commission's employees who were entitled to receive longevity payments received less than the amount to which they were entitled.

---

[3] The Department is the State's independent auditing agency.  As part of the State's Legislative branch, it is statutorily tasked with performing independent audits of all entities receiving or dispersing public funds.

> Underpayments occurred because longevity amounts due the employees
> were not increased in accordance with the requirements of state law,
> which provides that longevity pay amounts will be increased when
> employees do not receive a cost of living raise.

(Doc. # 31-1, at 10.)  To cure the deficiency, the Department recommended that the Commission "re-compute longevity pay for each employee for all years in which [he or she was] qualified to receive longevity pay for reason of not having received a cost of living pay increase and . . . pay the employees the total amount of all underpayments due them." (Doc. # 31-1, at 10.)

Before the official release of the report, the Department presented its findings and corresponding recommendations to the Commission at a meeting held on October 18, 2013.  Defendants Barnhart and Balch were present at the meeting on behalf of the Commission.  After the Department released the report, the Commission held a meeting with all of the full-time, part-time, and presently employed seasonal staff working at the USSRC.  During the meeting, the Commission's leadership, which included Barnhart, Balch, and Henderson, acknowledged the report, voiced its belief that the Department's findings were made in error,[4] and noted that it would implement changes if required.  Plaintiffs allege that the Commission has failed to change any of its policies

---

[4] Defendants argue that the Commission's enabling legislation provides for "different treatment of Commission employees vis-à-vis employees of other state agencies, with respect to merit pay and retirement participation." (Doc. # 33, at 14.)  Based on the analysis to follow, Defendants' assertions need not be resolved, but the proper interpretation and application of the Commission's enabling legislation and the various state statutes that regulate the compensation of state employees remain at the heart of Plaintiffs' claims and Defendants' defenses.

or take remedial measures with regard to its holiday or longevity-pay policies.  As a result, Plaintiffs filed the present lawsuit against the USSRC, the Commission, and the three officers.

The governing Second Amended Complaint raises claims under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 and under state law for breach of contract.  Plaintiffs seek various forms of declaratory and injunctive relief, as well as compensatory damages, attorney's fees, and costs.

## IV.  DISCUSSION

Defendants move to dismiss the federal- and state-law claims in the Second Amended Complaint.  The discussion proceeds in two parts.  Part A addresses the federal-law claims.  Because the federal-law claims are due to be dismissed, Part B explains why, in the court's discretion, the state-law claims are appropriate for dismissal under 28 U.S.C. § 1367(c)(3).

## A.    Federal-Law Claims:  42 U.S.C. § 1983

Plaintiffs' federal-law claims, originating under § 1983, allege violations of Plaintiffs' Fourteenth Amendment due process and equal protection rights.  Plaintiffs allege that Defendants deprived Plaintiffs of compensation guaranteed to them under §§ 1-3-8(e) and 36-6-11(a) of the Alabama Code without providing a hearing or any other process.  Further, Plaintiffs allege that Defendants violated their equal protection rights because, in depriving them of compensation under these state statutes, Defendants treated them differently than other state employees.

Defendants have moved to dismiss Plaintiffs' claims under two theories – a Rule 12(b)(1) attack, alleging a lack of subject-matter jurisdiction, and a Rule 12(b)(6) challenge, alleging that Plaintiffs fail to state a claim upon which relief can be granted. Before reaching the merits of the Rule 12(b)(1) and (b)(6) issues, it is necessary to address first the viability of the USSRC as a Defendant.

1.   *The USSRC*

Plaintiffs named the USSRC as a Defendant and specifically asserted that they are former employees of the USSRC.  (Doc. # 31, at 2.)  On their initial briefing, Defendants summarily noted that the USSRC is not "a legal entity capable of being sued" and contended, instead, that Plaintiffs are former employees of the Commission, which is tasked with operating the USSRC.  (Doc # 32, at 3; Doc. # 33, at 5.)  Because Defendants failed to provide any analysis supporting these assertions, both parties were ordered to submit additional briefing on whether the USSRC is a proper Defendant and a legal entity capable of being sued.  (Doc. # 44.)

To be a proper defendant under § 1983, the USSRC must be a "legal entity subject to suit."  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  "Whether a party has the capacity to be sued is determined by the law of the state in which the district court sits."  *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 700 (11th Cir. 2013) (citing *Dean*, 951 F.2d at 1214–15).

The parties point to no case law, and the court did not find any, addressing whether the USSRC is a legal entity subject to suit under § 1983.  Defendants cite,

9

however, the Commission's authorizing legislation, which establishes the Commission as a "state agency . . . with all of the powers and privileges of a corporation" for the purpose of managing and controlling "*facilities* to house and display such visual exhibits of space exploration and hardware used therefor as may be made available by the National Aeronautics and Space Administration."  Ala. Code § 41-9-430 (emphasis added); *see also* Ala. Code § 4-10-300 (defining the "Commission" and the "exhibit facilities").

The Commission persuasively argues that the USSRC is one of the facilities that the Commission manages and is not an independent legal entity under Alabama law. Plaintiffs do not argue differently and represent that they named the USSRC only as a "precautionary measure."[5]  (Doc. # 46, at 3.)  Accordingly, based upon § 41-9-430, the § 1983 claims against the USSRC are due to be dismissed.

### 2.    *Rule 12(b)(1) Arguments*

In their 12(b)(1) Motion to Dismiss, Defendants make three arguments as to why this court lacks subject-matter jurisdiction.  First, Defendants allege that the holding in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), deprives this court of subject-matter jurisdiction.  Second, Defendants contend that even if this case falls outside the scope of *Pennhurst*, the Commission is entitled to Eleventh

---

[5] The court has not considered the exhibit or affidavit attached to Defendants' supplemental briefing; therefore, conversion under Federal Rule of Civil Procedure 12(d) is not necessary. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.").

Amendment immunity from the present suit as instrumentalities of the State.   Third, Defendants contend that Plaintiffs lack standing to request prospective injunctive relief. Each argument will be addressed in turn.

### a.   *Pennhurst*

Defendants contend that Plaintiffs' federal-law claims are nothing more than artfully pleaded requests for this court to require Defendants to comply with state law. Defendants argue that federal courts lack jurisdiction over such claims.   In support, Defendants rely on the Supreme Court's holding in *Pennhurst*.   *Pennhurst*, however, is distinguishable.

In *Pennhurst*, the Supreme Court held that the Eleventh Amendment deprives federal courts of jurisdiction to order a state official to comply with state law.   *See id.* at 121.   The Eleventh Circuit provided clear guidance as to the reach of *Pennhurst* in *Brown v. Georgia Department of Revenue*, 881 F.2d 1018 (11th Cir. 1989).   In *Brown*, a tax field agent filed suit against his former employer, the Georgia Department of Revenue, and other state entities and officers in federal court, alleging that his termination violated the federal constitution, as well as federal and state statutory rights. *Id.* at 1019.   After a bench trial, the district court found that Mr. Brown's due process rights had been violated when he was terminated without a hearing as required by the Georgia Merit Systems Act.   As relief, the court ordered the state to provide Mr. Brown with a hearing before the State Personnel Board.   *Id.*

11

On appeal, the defendants argued that the Eleventh Amendment prohibited the relief the district court ordered insofar as it required "the state officials to comply with state law." *Id*. at 1022. The Eleventh Circuit noted, however, that the defendants were "misconstru[ing] the holding of *Pennhurst* and the claim presented" by Mr. Brown. *Id*. at 1023. While the Supreme Court had determined that the Eleventh Amendment barred the action in *Pennhurst*, the Circuit explained that the present action was different because relief had been granted on Mr. Brown's federal due process claim, not on a state-law claim. *Id*. The Eleventh Circuit found that the determinative question in such cases "is not the relief ordered, but whether the relief was ordered pursuant to state or federal law." *Id*. Regardless of the fact that the Georgia Merit Systems Act was a state law, *Pennhurst* did not provide a bar because the district court ordered relief pursuant to federal law. *See id.*

Here, also, the Eleventh Amendment does not prevent Plaintiffs from bringing their claims under § 1983. Although Plaintiffs complain vehemently about Defendants' alleged violation of state statutes, they seek relief for those violations based upon a purported violation of their due process and equal protection rights protected by the United States Constitution. Accordingly, Defendants' *Pennhurst* argument is without merit.

### b.  The Commission and the Eleventh Amendment

Defendants argue that the Eleventh Amendment provides the Commission with immunity from Plaintiffs' claims. The Eleventh Amendment bars federal courts from

entertaining suits brought against unconsenting states.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989) (holding that "a State is not a 'person' within the meaning of § 1983").  Further, the Eleventh Amendment also protects the immunity of "state agencies and entities that function as . . . 'arm[s] of the state.'"  *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) ("It is . . . well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the state' is sued.") (internal citation omitted).  The Eleventh Amendment bars suits against states and arms of the state – absent abrogation of immunity – regardless of the relief sought or the claims asserted.  *Pennhurst*, 465 U.S. at 101–02.

The Eleventh Circuit has explained that determining "[w]hether an entity functions as an 'arm of the state' is a federal question that [must be] resolve[d] by reviewing how the state courts treat the entity."  *Ross*, 701 F.3d at 659.  The Eleventh Circuit repeatedly has noted that "the most important factor is how the entity has been treated by the state courts."  *Id*. (quoting *Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290, 1292 (11th Cir. 2012)).  Based upon an examination of the Commission's founding legislation and Alabama case law, the court finds that Alabama courts would determine that the Commission functions as an arm of the state and is, therefore, entitled to Eleventh Amendment immunity.

First, Alabama Code §§ 41-9-430 to 41-9-439 established the Commission to operate in a corporate form for the purpose of providing "noncorporate or nonbusiness"

13

services, *i.e.*, to manage and control facilities for the display of "visual exhibits of space exploration and hardware," as well as "army weaponry and mementos of national defense" for public enjoyment.  Ala. Code § 41-9-430; *cf. Armory Comm'n of Ala. v. Staudt*, 388 So. 2d 991, 994 (Ala. 1980) (holding that the Armory Commission functioned as an arm of the state in part because it operated for nonbusiness purposes, specifically "to provide care for military facilities").  Second, "the legislation creating or authorizing the entity in question expressly characterizes the entity as an agency of the State."  *Ex parte Greater Mobile-Wash. Cnty. Mental Health-Mental Retardation Bd., Inc.*, 940 So. 2d 990, 1005 (Ala. 2006) (providing a list of cases wherein the Alabama Supreme Court found it "pertinent" that the entity was expressly characterized as a state agency).  Third, the statutes creating the Commission do not empower it to sue or subject it to suit.  *See Health Care Auth. for Baptist Health v. Davis*, 158 So. 3d 397, 405 (Ala. 2013) (explaining that the Legislature's decision to endow the health care authority with the power to sue and be sued showed the Legislature's intent to create an entity separate from the State).  Fourth, the enacting statute prescribes a level of state oversight that indicates that the Commission is an arm of the state.  *See* Ala. Code § 41-9-431 (explaining that the Commission's eighteen members are to be appointed by the Governor and that "any member may be removed by the Governor for just cause"); § 41-9-432(5) (requiring the Governor's approval of any Commission endeavor to sell interest-bearing general obligation bonds); § 41-9-437 (establishing

14

that the books and records of the Commission are subject to audit by the Department of Examiners of Public Accounts).

Additionally, Plaintiffs acknowledge, even argue, that the Commission is an entity of the State.  Accordingly, because the Commission operates as an arm of the State, and because Alabama has preserved its immunity, Ala. Const. Art. 1, § 14, Plaintiffs' claims against the Commission are due to be dismissed for want of jurisdiction.  *See McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) ("[F]ederal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment.").

### c.   Jurisdictional Challenges to Equitable Relief

In their final 12(b)(1) challenge, Defendants assert that two of Plaintiffs' requests for relief may not be maintained.  First, Defendants argue that as former employees, not current employees, Plaintiffs do not have standing to maintain a claim for prospective injunctive relief.  Plaintiffs counter that "a substantial continuing controversy" exists between Defendants and Plaintiffs as former employees.  (Doc. # 39, at 24.)  As an example of how a plaintiff will suffer a future injury absent injunctive relief, Plaintiff Ingalls explains that every future draw upon her retirement equals a future injury because her state retirement was diminished by Defendants' failure to compensate her in accordance with state law.

"A plaintiff has standing to seek declaratory or injunctive relief only when he alleges facts from which it appears there is a substantial likelihood that he will suffer

injury in the future." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (internal quotation marks and alteration omitted).   Former employee-plaintiffs face no threat of future injury from their former supervisor or employer-defendants. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997) (holding that former employee-plaintiffs lacked standing to sue employer for injunctive relief); *see also Drayton v. W. Auto Supply Co.*, No. 01–10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) (applying the holding in *Jackson*).

Since August 3, 2014, none of the three named Plaintiffs has been employed by the Commission.  While Plaintiffs allege that Ingalls is the subject of continuing harm through diminished state retirement payments, the injury that led to the alleged diminished payments occurred while Ingalls was employed.  Further, the court agrees with Defendants that any order of prospective injunctive relief "would have no impact on the retirement of employees who are no longer working, as their benefits are . . . 'based on the compensation [they] received'" while they were employed by the Commission.  (Doc. # 41, at 10 (quoting Ingalls Aff.).)  Accordingly, Plaintiffs lack standing to sue for prospective injunctive relief.

Second, Defendants contend that Plaintiffs "may not seek a declaration that the State's actions violated the law in the past."  (Doc. # 33, at 26.)  Plaintiffs argue in response that their claims for declaratory relief are not due to be dismissed.  Plaintiffs fail, however, to offer any case law or legal argument supporting their contention. Defendants are correct that *Ex parte Young* does not permit plaintiffs "to adjudicate the

legality of past conduct." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).  Hence, to the extent Plaintiffs seek a declaration that the past actions of the Commission were unlawful, they are not entitled to the declaratory relief sought. This finding is made as an alternative finding because, as previously discussed, the claims against the Commission are barred by the Eleventh Amendment.

As a final observation, it is unclear whether Plaintiffs seek relief under § 1983 against Barnhart, Balch, and Henderson in their individual capacities for injunctive and declaratory relief.  This court has found that a plaintiff cannot obtain either form of equitable relief under § 1983 from governmental officers sued in their individual capacities.  *See McGuire v. Strange*, No. 11cv1027, 2015 WL 476207, at *6 n.8 (M.D. Ala. Feb. 5, 2015).  As noted in *McGuire*, "[a]t least one district court in this circuit has found that individual-capacity suits under § 1983 for equitable relief are not sustainable." *Id.* (citing *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1281 (N.D. Ala. 2013) ("[S]tate officers may only be sued in their individual capacity for money damages under [§ 1983].")); *see also Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *Greenawalt v. Ind. Dep't of Corrs.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity.")); *see also Wolfe v. Strankman*, 392 F.3d 358, 360 n. 2 (9th Cir. 2004) (noting that injunctive and equitable relief were not available in § 1983 individual-

capacity suits).  Based upon *McGuire* and the decisions upon which its ruling relies, to the extent that Plaintiffs bring § 1983 individual-capacity claims for injunctive and declaratory relief against Barnhart, Balch, and Henderson, those claims are not cognizable.

### 2. *Rule 12(b)(6) Motion to Dismiss*

In accordance with the foregoing analysis of Defendants' Rule 12(b)(1) challenges to Plaintiffs' Second Amended Complaint, only the § 1983 claims against Barnhart, Balch, and Henderson in their individual capacities remain. Hence, Defendants' Rule 12(b)(6) arguments only need to be addressed as to these remaining individual Defendants.

Plaintiffs bring two claims under § 1983.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  No argument is made that Plaintiffs have not alleged adequately that the individual Defendants acted under color of state law.  To satisfy the first element, Plaintiffs allege violations of equal protection and procedural due process rights secured by the Fourteenth Amendment to the United States Constitution.  In response, Defendants raise the defense of qualified immunity.

### a.    Qualified Immunity:  Generally

Qualified immunity involves a two-step inquiry.  First, "the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.'"  *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)).  If Defendants satisfy their burden, the burden shifts to Plaintiffs to demonstrate that (1) Defendants violated a constitutional right and (2) the right was clearly established when Defendants acted.  *See Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).  The latter two elements may be analyzed "in whatever order is deemed most appropriate for the case."  *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 241–42 (2009)).

For the reasons that follow, Defendants were acting within the scope of their authority when the constitutional violations allegedly occurred; however, Plaintiffs fail to allege the violation of clearly established law on the equal protection claim.  They also fail to allege both the violation of a Fourteenth Amendment procedural due process right or clearly established law.  Accordingly, Defendants are entitled to qualified immunity on the § 1983 claims.

### b.    Equal Protection

Plaintiffs allege that the individual Defendants violated §§ 1-3-8(e) and 36-6-11(a) of the Alabama Code by not offering the Commission's employees who worked at the USSRC the statutes' full measure of benefits offered to other state employees.

19

Plaintiffs also assert that they are similarly situated to all other state employees and that the classification of Plaintiffs as a group of state employees who are not entitled to equal application of §§ 1-3-8(e) and 36-6-11(a) is intentionally discriminatory in violation of the Equal Protection Clause.  As stated, the qualified immunity analysis is dispositive of this claim.

### i.    Discretionary Authority

Plaintiffs contend that the individual Defendants acted outside their discretionary authority because they had no authority under § 1-3-8(e) and § 36-6-11(c), "to unilaterally 'elect' to withhold [paid h]oliday and [l]ongevity compensation and treat its payment as 'optional.'"  (Doc. # 39, at 18.)  But "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act.  Framed that way, the inquiry is no more than an untenable tautology."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282–83 (11th Cir. 1998) (citation and internal quotation marks omitted).  Instead, the proper inquiry is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."  *Id.* at 1282.

With the proper parameters in place, the issue is whether the individual Defendants, as the chief executive officer, chief financial officer, and vice president of human resources of the Commission, had the authority to alter the compensation and benefits package for the employees who worked at the USSRC.  The Second Amended Complaint alleges that the individual Defendants possessed the requisite authority to

20

implement policy changes concerning the compensation plan of employees to comply with state laws.  (Doc. # 31, at 17 (explaining that the individual Defendants "were tasked with ensuring that the Commission . . . complied with all applicable Alabama laws regarding [the] payment of state employees").)  In particular, Plaintiffs note that it is principally because the individual Defendants failed to take any action in light of the Department's 2014 report that Plaintiffs filed the instant action.  (Doc. # 31, at ¶ 54 (alleging that the individual Defendants "have done nothing in response to the Department's report").)

In sum, the Second Amended Complaint adequately alleges that the individual Defendants' conduct was undertaken pursuant to their duties as officers of the Commission and that they were acting within the scope of their discretionary authority when alleged violated state laws by refusing to compensate Plaintiffs for all of the state holidays and the full benefits of longevity pay.  Accordingly, the court turns to the next step of the qualified immunity inquiry.[6]

### ii.    Clearly Established Constitutional Right

It is fitting to bypass the issue of whether Plaintiffs have alleged an equal protection violation and consider only the issue of whether the equal protection violation alleged was clearly established.  *See Pearson*, 555 U.S. at 239 ("[T]here will

---

[6] Generally, the qualified-immunity analysis requires a comparison of "the acts of each defendant to analogous case law to determine whether each defendant has violated a clearly established constitutional right."  *Corey Airport Servs. Inc. v. Decosta*, 587 F.3d 1280, 1288 (11th Cir. 2009).  Separate analysis is not necessary here, however, because the allegations discuss the conduct of the individual Defendants collectively without differentiation.

be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all.").

"Clearly established" means that "pre-existing law at the time of the alleged acts provided fair warning to Defendants that their actions were unconstitutional." *Sada v. City of Altamonte Springs*, 434 F. App'x 845, 849 (11th Cir. 2011) (citing *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002)). Plaintiffs can establish that their rights are clearly established by pointing to (1) case law with materially similar facts establishing the constitutional right, (2) "a broader, clearly established principle that should control the novel facts of the situation," *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (quotation marks and alterations omitted), or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law," *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). Plaintiffs "must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [applicable state] Supreme Court." *Terrell*, 668 F.3d at 1255. This case does not fit within any of *Terrell*'s three scenarios.

First, Plaintiffs do not argue that there is a decision from the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court that has found a violation of the Equal Protection Clause based on facts similar to those that Plaintiffs allege, and the court's independent research did not uncover such a decision.

22

Accordingly, Plaintiffs have not demonstrated clearly established law through a binding case presenting materially similar facts.

Second, to support their argument that the law is clearly established that the individual Defendants' transgression of state laws governing compensation benefits for state employees impermissibly discriminated against Plaintiffs in violation of their equal protection rights, Plaintiffs contend that *Strickland v. Alderman*, 74 F.3d 260 (11th Cir. 1996), sets forth a broad clearly established principle that controls the "novel facts" of this case.  *Terrell*, 668 F.3d at 1255.  Plaintiffs cite *Strickland* for its pronouncement that "[i]t is well settled that unequal application of a facially neutral statute may violate the Equal Protection Clause." *Id.* at 264.  To be controlling in the sense contemplated by *Terrell*, however, *Strickland*'s principles must be established with "obvious clarity" such that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Terrell*, 668 F.3d at 1256 (citation and internal quotation marks omitted).  And, as *Corey Airport Services, Inc. v. Decosta* recognized, "such decisions are rare" and occur only where "so few facts are material to the broad legal principle." 587 F.3d 1280, 1287 (11th Cir. 2009) (citation and internal quotation marks omitted) (determining that, because a claim of insider-outsider political discrimination presented novel legal questions and novel factual circumstances, earlier recitations of broad legal principles were insufficient to put the defendants on notice that their acts violated the Constitution).

23

Here, Plaintiffs' equal protection claim presents novel facts and novel law incompatible with a premise that the rights were sufficiently covered by broad clearly established legal principles. *See id.* Even if, as Plaintiffs strenuously argue, the individual Defendants violated §§ 1-3-8(e) and 36-6-11(a), in denying Plaintiffs the full measure of benefits conferred by these statutes, Plaintiffs must do more than show that the individual Defendants violated *state law*. They must show that the individual Defendants violated *clearly established federal law*. Plaintiffs do not cite any precedential decision holding that a state official's transgression of state laws governing entitlements to employment benefits violates the Equal Protection Clause, "let alone one that could control, 'with obvious clarity,' these factual circumstances." *Id.* Accordingly, Plaintiffs fail to establish clearly established law under *Terrell*'s second scenario.

Third and finally, Plaintiffs have not demonstrated conduct so egregious that the constitutional violation is clear, even in the complete absence of guiding case law. (*See* Doc. # 39, at 22 n.11.)  This third category of cases is "narrow" and encompasses only situations where "'the official's conduct lies so obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Terrell*, 668 F.3d at 1255–57 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002)).

Here, Plaintiffs have not shown that the individual Defendants' alleged violations of state laws resulted in infringements that lie at the very core of what the

Equal Protection Clause of the Fourteenth Amendment prohibits.  Moreover, because
the individual Defendants' alleged violations of state law are not obviously equal
protection violations, *Strickland*'s "highly general principle – that unequal application
of [a] facially neutral law with the intent to discriminate may violate the equal protect
clause" – does not offer "fair warning" to the individual Defendants that their treatment
of Plaintiffs violated the Equal Protection Clause.  *See Corey Airport Servs.*, 587 F.3d
at 1287; *see also id.* at 1287 n.5 (noting also that *Strickland*'s two-part test "offers . . .
defendants no better warning than does the Equal Protection Clause of the Fourteenth
Amendment").

For the foregoing reasons, Plaintiffs fail to allege the violation of clearly
established law.  The individual Defendants are entitled to qualified immunity,
therefore, on Plaintiffs' Fourteenth Amendment equal protection claim.

### c.     Procedural Due Process

Plaintiffs allege (1) that the individual Defendants violated clear Alabama law,
namely, §§ 1-3-8(e) and 36-6-11(c), by refusing to give them six paid holidays (or
compensation in lieu thereof) and full payment for longevity pay, (2) that they have
constitutionally protected property rights in these state statutory benefits, and (3) that
the individual Defendants deprived them of their property rights without affording them
any process.  A Fourteenth Amendment claim alleging a violation of the right to
procedural due process under § 1983 requires a plaintiff to allege three elements:  "(1)
a deprivation of a constitutionally-protected property interest; (2) state action; and (3)

constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347–48 (11th Cir. 2006).  For the reasons to follow, Plaintiffs have not alleged the violation of a *constitutionally protected* property interest or, alternatively, the violation of a clearly established constitutionally protected property interest in the full panoply of benefits set out in §§ 1-3-8(e) and 36-6-11(a) of the Alabama Code.

The Supreme Court has explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) (citing as examples of property interests an individual's continued receipt of welfare benefits and a tenured public employee's continued employment).  Plaintiffs' property interests in their employment benefits, if such exists, must come from state law.  *See Key W. Harbour Dev. Corp. v. City of Key West, Fla*., 987 F.2d 723, 727 (11th Cir. 1993) ("State law defines the parameters of a plaintiff's property interest for purposes of section 1983.").  Whether Alabama law "has created a property interest is a legal question for the court to decide." *Id.*

Plaintiffs argue that they are state employees within the meaning of §§ 1-3-8(e) and 36-6-11(a), and they point to the statutes' mandatory directives to establish their entitlement to the statutes' benefits.  Plaintiffs' arguments are not without some force, and, as they emphasize, they have the backing of the Department's 2014 report, which recommended that the Commission follow the dictates of §§ 1-3-8(e) and 36-6-11(a).

26

At the same time, Defendants proffer an insightful countervailing legal argument that, while the Commission's employees are state employees, their benefits are not wholly commensurate with those enjoyed by other state employees. *See, e.g.*, Ala. Code § 41-9-432(13) (exempting the Commission's personnel from the provisions of the state Merit System Act). Defendants emphasize that Commission employees never have received these statutory benefits. Implicit in this argument is that, rightly or wrongly, the individual Defendants have concluded that Plaintiffs and similarly situated Commission employees do not have a right to all of the benefits enumerated in §§ 1-3-8(e) and 36-6-11(a), to include state holidays and the full benefits of longevity pay. Defendants further argue that Plaintiffs' claim to benefits is "based on nothing more than their unilateral assertion that they are entitled to [those benefits]." (Doc. # 41, at 4.)

While the foregoing arguments are noted, the court need not decide whether the Alabama statutes at issue create property interests for Plaintiffs. Even if it is assumed that §§ 1-3-8 and 36-6-11 applies to the Commission's employees and that these statutes create a legitimate claim of entitlement by Plaintiffs to those statutory employment benefits, and, thus, confer property rights, that does not end the constitutional analysis. "Deprivation of a benefit to which one is entitled under a statute or a contract does not automatically give rise to a property interest protected by the Due Process Clause." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898 (9th Cir. 1993). As the Seventh Circuit has explained, "[i]n deciding whether a particular breach [of a public employment

contract] should be deemed a deprivation of property [courts] must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts. Most common law wrongs are not actionable under section 1983, though by definition they involve the deprivation of a legally protected interest." *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983). "Only interests substantial enough to warrant the protection of federal law and federal courts are Fourteenth Amendment property interests." *Id.* (citing *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)).

"Just as Section 1983 does not create a cause of action for every state-action tort, it does not make a federal case out of every breach of contract by a state agency." *Braden v. Texas A & M Univ. Sys.*, 636 F.2d 90, 93 (5th Cir. 1981) (internal citations omitted);[7] *see also Ramsey v. Board of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268, 1272 (6th Cir. 1988) ("Not every deprivation . . . of property requires a . . . federal remedy."). Other circuits have concluded that not all breaches of a public employee's contract are deprivations that possess the necessary substantiality to warrant protection under the Fourteenth Amendment's Due Process Clause. These circuits have excluded from the Due Process Clause's reach a public employer's denials of accrued sick leave, pension benefits, accrued time off, and promotion rights. *See Ramsey*, 844 F.2d at 1268 (collecting cases).

---

[7] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

*Ramsey* is particularly instructive for purposes of addressing Plaintiffs' due process claim.  In *Ramsey*, the Sixth Circuit held that, although the plaintiff may have had a property interest in her accumulated sick leave, "an interference with a property interest in a pure benefit of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action and not by a federal action under section 1983."  *Id.* at 1274–75.  The court explained that the Due Process Clause protects a property interest in tenured employment because "the tenured employee who loses his or her position by a premature breach of contract has suffered the loss of a property interest that, because of its special nature, is neither easily defined nor easily compensated by a typical breach of contract action."  *Id.*  In contrast, "an employee deprived of a property interest in a specific benefit, term, or condition of employment, suffers a loss which is defined easily."  *Id.*  The essence of *Ramsey*'s holding is that "entitlement to accumulated sick leave, although a property interest, is not constitutionally protected."  *Portman*, 995 F.2d at 906 (citing *Ramsey*, *supra*).

Plaintiffs' claims of deprivations of property interests in compensatory leave (or its monetary equivalent) for work performed on state holidays and in the full benefits of longevity pay fall within the same category as the claims made by the employee in *Ramsey*.  As in *Ramsey*, the remedies provided under state law for breaches of public employment contracts for benefits will provide an adequate remedy.  *See Ramsey*, 844 F.2d at 173 ("A state breach of contract action is most clearly an adequate remedy for

a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties.").  Measuring the loss of the benefits is mathematically quantifiable.  Hence, to the extent that Plaintiffs have alleged a property interest in specified statutory benefits, Plaintiffs' remedy lies in state law, not federal law.  In other words, the alleged property interests in these pure benefits of employment are not constitutionally protected.  Accordingly, the Second Amended Complaint fails to allege the violation of a right protected by the Fourteenth Amendment's Due Process Clause.

Moreover, at the very least, the individual Defendants are entitled to qualified immunity on Plaintiffs' procedural due process claim.  Plaintiffs do not cite, and the court did not find, a decision from the United States Supreme Court, Eleventh Circuit, or Alabama Supreme Court that has considered whether the type of employment benefits conferred by §§ 1-3-8(e) and 36-6-11(a) are the sort of property interests protected by the Fourteenth Amendment's right to procedural due process.  The failure of Plaintiffs to demonstrate a clearly established right that their claimed property interests are protected by the Fourteenth Amendment's Due Process Clause presents an alternative basis for Rule 12(b)(6) dismissal.

**B.    <u>State-Law Claims</u>**

Because the court has granted Defendants' motion to dismiss as to each claim over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims.  28 U.S.C. § 1367(c)(3).  The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as

here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).  Moreover, the Eleventh Circuit has explained that judicial comity also may support a district court's decision to decline to exercise supplemental jurisdiction.  *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).

Because Defendants' motion to dismiss is due to be granted as to all of Plaintiffs' federal-law claims and the remaining state-law claims require the interpretation and application of state statutes regulating the compensation of state employees, the court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

## V.  CONCLUSION

Based on the foregoing analysis, it is ORDERED that Defendants U.S. Space and Rocket Center, the Alabama Space Science Exhibit Commission, Deborah E. Barnhart, Brooke Balch, and Vickie Henderson's motion to dismiss (Doc. # 32) is GRANTED as to the federal-law claims.  It is further ORDERED that the court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims and that, therefore, Defendants' motion to dismiss (Doc. # 32) is DENIED as moot as to the state-law claims.

A separate final judgment will be entered.

DONE this 27th day of July, 2015.

_____
            /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE